# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LOCKE SUPPLY CO., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| OKLAHOMA CITY COMMERCIAL | ) | |
| DEVELOPERS ASSOCIATION, | ) | |
| | ) | |
| Intervening Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-24-420-PRW |
| | ) | |
| CITY OF OKLAHOMA CITY, | ) | |
| a municipal corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Before the Court are the Defendant City of Oklahoma City's (the "City") Motion for Judgment on the Pleadings and Brief in Support (Dkt. 26); Intervening Plaintiff Oklahoma City Commercial Developers Association's ("OKC-CDA") Response (Dkt. 28); the City's Reply (Dkt. 29); and OKC-CDA's Sur-Reply (Dkt. 32). For the following reasons, the Court **GRANTS** the City's Motion for Judgment on the Pleadings (Dkt. 26).

### *Background*

The primary question presented by this case is whether Oklahoma City Ordinance No. 25,374 violates the Fifth Amendment's Takings Clause and Title 62 O.S. § 895. Oklahoma City Ordinance No. 25,374 creates and governs development fees assessed on new development, typically at the time of building permit issuance, to help fund capital

1

improvements to the City's public park and streets systems. OKC-CDA is a local trade association comprised of sixty members, who work in the development of commercial real estate in Oklahoma City. OKC-CDA argues that the development fee violates the unconstitutional conditions doctrine, as applied in the context of the Takings Clause, because the City failed to make individualized determinations that the fee bears an essential nexus or rough proportionality to the public impacts caused by the proposed project. As part of its requested relief, OKC-CDA demands a full refund of the "unlawful exactions" paid by its members to the City as a condition to obtaining building permits.

On August 18, 2025, the City filed the Motion for Judgment on the Pleadings (Dkt. 26).  The City's Motion focuses on the narrower issue of whether OKC-CDA can assert associational standing to seek monetary damages on behalf of its members.

### *Legal Standard*

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." In the Tenth Circuit, "[a] motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."[1] Accordingly, the Court "accepts as true all well-pleaded factual allegations in the complaint, 'resolve[s] all reasonable inferences in the plaintiff's favor, and ask[s] whether it is plausible that the

---

[1] *Zevallos v. Allstate Prop. & Cas. Co.*, 776 F. App'x 559, 561 n.1 (10th Cir. 2019) (quoting *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000)).

plaintiff is entitled to relief.'"[2] "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[3]

However, unlike with a motion to dismiss, in ruling on a motion for judgment on the pleadings, the Court may, as the name suggests, consider the answer to the complaint.[4] As Wright and Miller explain:

> As numerous judicial opinions make clear, a Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute between the parties and a judgment on the merits can be achieved by focusing on the content of the competing pleadings, exhibits thereto, matters incorporated by reference in the pleadings, whatever is central or integral to the claim for relief or defense, and any facts of which the district court will take judicial notice. The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.[5]

---

[2] *Woodie v. Berkshire Hathaway Homestate Ins. Co.*, 806 F. App'x 658, 666 (10th Cir. 2020) (quoting *Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013) and citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)))).

[3] *Id.* (quoting *Iqbal*, 556 U.S. at 678).

[4] *See Park Univ. Enterprises, Inc. v. Am. Cas. Co. of Reading, PA*, 442 F.3d 1239, 1244 (10th Cir. 2006), *abrogated on other grounds by Magnus, Inc. v. Diamond State Ins. Co.*, 545 F. App'x. 750 (10th Cir. 2013).

[5] 5C Wright & Miller, Federal Practice and Procedure: Civil 3d § 1367 (footnotes omitted).

*Discussion*

Federal courts are courts of limited jurisdiction.[6] For a federal court to exercise jurisdiction over an action, the plaintiff must have standing to sue.[7] In *Hunt v. Washington State Apple Advert. Comm'n*, the Supreme Court held that an association has standing to bring suit on behalf of its members when:

> [1] its members would otherwise have standing to sue in their own right; [2] the interests it seeks to protect are germane to the organization's purpose; and [3] neither the claim asserted *nor the relief requested* requires the participation of individual members in the lawsuit.[8]

As elaborated on in *United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, the first and second prong are grounded in Article III's case or controversy requirement but "[t]he third prong is best seen as focusing on matters of administrative convenience and efficiency, not on elements of a case or controversy."[9]

Whether a remedy falls under the third prong's ambit turns on if it requires the individual participation of an association's members. "Individual participation is not normally required when 'an association seeks prospective or injunctive relief for its members' because 'the remedy, if granted, will inure to the benefit of those members of the association actually injured.'"[10] However, "such participation would be required in an

---

[6] *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

[7] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

[8] *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977) (emphasis added); *see United Food & Com. Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996).

[9] *United Food & Com. Workers Union Local 751*, 517 U.S. at 544–45.

[10] *Gonzalez ex rel. Doe v. Albuquerque Pub. Schs.*, No. CIV 05-580 JB/WPL, 2006 WL 1305032, at *2 (D.N.M. Jan. 17, 2006) (internal citation omitted) (first quoting *United*

4

action for damages to an association's members, thus suggesting that an association's action for damages running solely to its members would be barred for want of the association's standing to sue."[11] Thus, absent congressional abrogation, courts bar associations from seeking monetary damages on behalf of their members.[12] Yet some Circuits have suggested that prohibition against monetary damages may not be absolute.[13] Permissibility depends on whether the refund or other form of monetary relief can be awarded without "individualized proof."[14]

The typical case of individualized proof looks like this: an association requests a unique reimbursement of funds that depends on a member's unique circumstances. And cases draw no distinction between damages proven by convoluted or simple evidence. For example, the D.C. Circuit ruled that the Air Transport Association of America lacked standing to seek reimbursement from the Immigration and Nationalization Service on behalf of its member airlines who were forced to pay detention expenses for alien stowaways.[15] The D.C. Circuit considered how the complicated determination of the award depended on "how much money the airlines paid, for what kinds of detention services, and

---

*Food & Com. Workers Union Local 751*, 517 U.S. at 546; second quoting *Warth v. Seldin*, 422 U.S. 490, 515 (1975)).

[11] *United Food & Com. Workers Union Local 751*, 517 U.S. at 546.

[12] *Id.*

[13] *E.g.*, *Air Transport Ass'n of Am. v. Reno*, 80 F.3d 477, 484 (D.C. Cir. 1996).

[14] *See United Food & Com. Workers Union Local 751*, 517 U.S. at 558.

[15] *Air Transport Ass'n of Am.*, 80 F.3d at 484.

for which type of aliens."[16] However, in a case from the Seventh Circuit, even though setting the award would be fairly simple, the court ruled that a trade association in Chicago could not seek § 4 damages under the Clayton Act on behalf of its soybean farmer members.[17] While the calculation of damages in that case was "technical and uncomplicated," the Seventh Circuit hinged its decision on the fact each injured party would still need to furnish some degree of information to the Court.[18]

Here, in addition to declaratory and injunctive relief, OKC-CDA asks that the City refund the development fees paid by its members. The City does not challenge OKC-CDA's satisfaction of *Hunt*'s first and second prong. Instead, the City argues that it cannot satisfy the third prong because issuing refunds would require an individualized assessment peculiar to each member. OKC-CDA responds that the refunds would not compel the Court to make any sort of subjective calculation; rather, the amounts to be refunded are fixed, objective, and fully known. The Court agrees with the City and finds OKC-CDA does not have standing to request monetary refunds on behalf of its members.

Admittedly, calculating refunds in this case may appear relatively straightforward. Title 62 O.S. § 895(E) and (J) require the City to keep detailed records of the development fees it collects from builders. But the mere fact that a defendant may have receipts at its disposal does not eliminate the need for member participation. Indeed, awarding refunds would require the Court to conduct individual assessments. The Court would need to

---

[16] *Id.*

[17] *Sanner v. Bd. of Trade of City of Chicago*, 62 F.3d 918, 922–23 (7th Cir. 1995).

[18] *Id.* at 923.

6

identify which builders paid development fees, determine how many payments each builder made, verify the amounts owed, and ensure that any refund is directed to the proper recipient. These inquiries would necessarily require participation from the affected members and therefore defeat associational standing under *Hunt*'s third prong.

This case also presents significant procedural burdens on the Court that are inconsistent with the third prong's prudential justification. OKC-CDA's theory assumes that it identified each affected member, they know every instance in which a member paid development fees, and the records are, in fact, complete and accurate. If any of these assumptions end up being false, the Court would have to determine which members paid development fees and the amount owed to each. And if OKC-CDA lost this case or if a builder received an incorrect award, then the members might later dispute whether the association adequately represented their interests. This predicament not only harkens back to the efficiency concerns identified in *United Food* but also to the issues posed by circumventing class-action procedures. As explained by then-Circuit Judge Robert Bork in *Telecomm. Rsch. & Action Ctr. v. Allnet Commc'ns Servs, Inc.*:

> [I]f this suit had been brought as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure, then *before the suit could proceed* the court would ascertain whether the representative parties will fairly and adequately protect the entire class and make certain that class members learn of the action through the best notice practicable. In contrast, if the association lost this suit, the question could arise later whether it had adequately represented the interests of its members so as to preclude them from bringing suit on their own. A court would then have to rule on that independent claim and might have to hear subsequent suits. In addition, if the association prevailed and damage relief were granted, the court would then have to take steps through some new mechanism to assure that all appropriate members of the association are notified, or are included. Any shortcomings in this respect

7

could again raise independent questions about the preclusive effect of such a judgment on those members.[19]

Considering both the need for individual member participation and the potential procedural consequences, the Court holds that awarding monetary damages to OKC-CDA's members violates *Hunt*'s third prong. OKC-CDA therefore lacks standing to pursue such relief on behalf of its members.

### *Conclusion*

The Court **GRANTS** the City's Motion for Judgment on the Pleadings (Dkt. 26).

**IT IS SO ORDERED** this 31st day of March 2026.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE

---

[19] *Telecomm. Rsch. & Action Ctr. v. Allnet Commc'ns Servs, Inc.*, 806 F.2d 1093, 1098 (D.C. Cir. 1986) (Bork, J., concurring) (emphasis in original) (internal citations omitted).